FILED
2021 Mar-10  AM 10:55
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **Dr. EDWARD L. JONES,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| | } | |
| | } | |
| **v.** | } | **Case No.:  5:17-cv-01723-MHH** |
| | } | |
| | } | |
| **THE BOARD OF TRUSTEES FOR ALABAMA AGRICULTURAL & MECHANICAL UNIVERSITY, d/b/a ALABAMA A&M UNIVERSITY, et al.,** | | |
| | | |
| **Defendants.** | | |

### MEMORANDUM OPINION

In this employment discrimination lawsuit, Dr. Edward Jones, a former tenured professor at Alabama A&M University, has sued the Board of Trustees for the university and the university's president, provost, and dean of the College of Education.  Dr. Jones alleges that the Board violated Title VII by discriminating against him based on his sexual orientation and that the individual defendants

1

discriminated against him based on his sexual orientation in violation of 42 U.S.C. § 1983.  (Doc. 29).[1]

Pursuant to Rule 12(b)(6) of the Federal Rule of Civil Procedure, the defendants have asked the Court to dismiss Dr. Jones's third amended complaint for failure to state a claim upon which relief can be granted.  (Doc. 36).  In this opinion, the Court will discuss the procedural history of the case, explain the rules that govern the defendants' motion to dismiss, recount the factual allegations in Dr. Jones's third amended complaint, and then decide whether Dr. Jones may pursue his claims.

## I.

In this action, Dr. Jones initially sued Alabama A&M University.  (Doc. 1).[2] A week after he filed his original complaint, he filed his first amended complaint. (Doc. 2).  A&M moved to dismiss Dr. Jones's first amended complaint.  (Doc. 5).

_____

[1] Dr. Jones also alleges that the Board retaliated against him in violation of Title VII.  (Doc. 29, pp. 13-14, ¶¶ 28-30).  Because the Court concluded that Dr. Jones did not allege facts to support a Title VII retaliation claim, the Court dismissed that claim before the defendants moved to dismiss Dr. Jones's third amended complaint.  (Doc. 30).

[2] This is not Dr. Jones's first lawsuit against the University based on his firing.  In *Jones v. Hugine*, 5:16-cv-00326-MHH, filed on February 24, 2016, Dr. Jones sued many of the same defendants for violations of the Due Process and Takings Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, a violation of the Fourth Amendment, and violations of Alabama state law.  (Doc. 1, p. 3, ¶ 6 in 5:16-cv-00326).  The defendants moved to dismiss for failure to state a claim.  (Doc. 17 in 5:16-cv-00326).  The Court attempted to conduct telephone conferences with respect to Dr. Jones's counsel's request to withdraw and eventually issued a show cause order for Dr. Jones to explain why the Court should not dismiss the case for failure to prosecute.  (Doc. 57 in 5:16-cv-00326).  Eventually, the Court dismissed the case for failure to prosecute, (Doc. 68 in 5:16-cv-00326), and denied motions to vacate the order dismissing the case, (Doc. 75 in 5:16-cv-00326).

Because the parties did not consent to a magistrate judge's dispositive jurisdiction, the case was transferred to the undersigned's docket. (Doc. 12).

After reviewing A&M's motion to dismiss, the Court found that Dr. Jones's pleading deficiencies could be addressed through an amended pleading and offered Dr. Jones 14 days in which to file an amended complaint. (Doc. 16). The Court noted that the issue of whether Title VII afforded a cause of action for discrimination based on sexual orientation was pending before the Supreme Court and stated that the Court would not "reach that issue until the Supreme Court issue[d] a decision . . . ." (Doc. 16). When Dr. Jones filed his second amended complaint, he added as defendants Dr. Andrew Hugine, Dr. Daniel Wims, and Dr. Curtis Martin. (Doc. 22). Dr. Jones amended his complaint again, and that third amended complaint is the subject of the defendants' pending motion to dismiss. (Docs. 29, 36). In his third amended complaint, Dr. Jones substituted the Board of Trustees for Alabama A&M University as the employer defendant for his Title VII claim. (Doc. 36, p. 1).[3]

_____

[3] To distinguish between the original employer defendant in this action and the current employer defendant, in this opinion, the Court refers to the Board as the defendant named in the third amended complaint for purposes of Dr. Jones Title VII claim. In their briefs relating to the third amended complaint, the parties have referred to the employer defendant as the University. (Docs. 36, 37, 41, 42).

In the Title VII count of his third amended complaint, Dr. Jones has referred generally to "the Defendants" who he alleges were operating "by and through its Board of Trustees." (Doc. 29, p. 14). The Board was Dr. Jones's employer, and the Board is the proper defendant for Dr. Jones's Title VII claim. Dr. Jones acknowledges the point in his brief in opposition to the defendants' motion to dismiss his third amended complaint. (Doc. 41, p. 4).

After reviewing Dr. Jones's third amended complaint, the Court ruled *sua sponte* that Dr. Jones did not allege a viable retaliation claim because he did not allege that he suffered an adverse employment action because he participated in the investigation of conduct prohibited by Title VII or because he opposed an employment practice prohibited by Title VII.  (Doc. 30).  Accordingly, the Court dismissed Dr. Jones's retaliation claim against the Board of Trustees.  (Doc. 30).  The Court then stayed the deadlines in the case pending the outcome of the Supreme Court's decision in in *Bostock v. Clayton,* a Title VII sexual orientation discrimination case.  (Doc. 30).

Following the Supreme Court's June 15, 2020 decision in *Bostock v. Clayton Cty., Ga.*, 140 S.Ct. 1731 (2020), the Court permitted Dr. Jones to proceed with his claims for discrimination based on sexual orientation.  (Doc. 35).  The defendants then filed the pending motion to dismiss for failure to state a claim under Rule 12(b)(6).  (Doc. 36).[4]

---

[4] Though the Court already had dismissed the claim, the defendants devoted a substantial portion of their brief in support of their motion to dismiss to arguments advocating for the dismissal of Dr. Jones's Title VII retaliation claim.  (Doc. 37, pp. 16-22).  Dr. Jones responded in kind.  (Doc. 41, pp. 19-24).  The Court repeats its holding that Dr. Jones has failed to state a claim for Title VII retaliation in his third amended complaint.

## II.

Rules 8 and 12 of the Federal Rules of Civil Procedure govern the defendants' motion to dismiss.  Rule 8(a)(2) requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) enables a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  "Generally, to survive a [Rule 12(b)(6)] motion to dismiss and meet the requirement of Fed. R. Civ. P. 8(a)(2), a complaint need not contain 'detailed factual allegations,' but rather 'only enough facts to state a claim to relief that is plausible on its face.'"  *Maledy v. City of Enterprise*, 2012 WL 1028176, at *1 (M.D. Ala. Mar. 26 2012) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007)).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

"Thus, the pleading standard set forth in Federal Rule of Civil Procedure 8 evaluates the plausibility of the facts alleged, and the notice stemming from a complaint's allegations."  *Keene v. Prine*, 477 Fed. Appx. 575, 583 (11th Cir. 2012). "Where those two requirements are met . . . the form of the complaint is not

significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim." *Keene*, 477 Fed. Appx. at 583.

The defendants have raised several affirmative defenses in their motion to dismiss. The Eleventh Circuit Court of Appeals has held that "[g]enerally, the existence of an affirmative defense will not support a motion to dismiss," but a district court may dismiss a complaint under Rule 12(b)(6) when the plaintiff's allegations "indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984); *see also Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1225 n.8 (11th Cir. 2016). Qualified immunity, an affirmative defense on which the individual defendants rely in support of their motion to dismiss, is a defense that district courts must examine at the 12(b)(6) stage to determine whether a plaintiff's claims against state officials may proceed. When a defendant asserts the affirmative defense of qualified immunity, "unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985). "Absent such allegations, 'it is . . . appropriate for a district court to grant the defense of qualified immunity at the

motion to dismiss stage.'"  *Cottone v. Jenne*, 326 F.3d 1352, 1357 (11th Cir. 2003) (quoting *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003)).

When evaluating a motion to dismiss, a district court accepts as true the factual allegations in the complaint and construes the allegations in the light most favorable to the plaintiff.  *See Brophy v. Jiangbo Pharms. Inc.*, 781 F.3d 1296, 1301 (11th Cir. 2015).  Therefore, the Court will view Dr. Jones's factual allegations in his favor and will draw inferences from the factual allegations in his favor.

## III.

Dr. Jones taught at Alabama A&M University for more than 25 years.  (Doc. 29, p. 6, ¶ 11).  In 2015 and 2016, Dr. Jones was a tenured professor and Director of Teacher Certification in the College of Education, Humanities, and Behavioral Science.  (Doc. 29, p. 2, ¶ 3).  Dr. Martin was the dean of the College of Education.  (Doc. 29, p. 2, ¶ 3).  Dr. Hugine was the president of the university, and Dr. Wims was the provost of the university.  (Doc. 29, p. 2, ¶ 3).

On October 13, 2015, Dr. Jones received a letter from Dr. Wims, explaining that as of October 13, 2015, per the recommendation of Dr. Martin, Dr. Jones's immediate supervisor, the Board was placing Dr. Jones on paid administrative leave.

(Doc. 29, p. 8, ¶ 17).[5]  The letter stated that "serious concerns [were] raised by the Alabama State Department of Education (ALSDE) as to the sufficiency of our administrative processes along with other administrative compliance issues identified by your immediate supervisor."  (Doc. 29, p. 8, ¶ 17).  Dr. Jones met with Dr. Martin, and Dr. Martin "indicated specifically that he 'did not know what this was about' and that the Plaintiff would 'probably be back in just a few days'."  (Doc. 29, p. 8, ¶ 17).

Later that day, university officials confiscated Dr. Jones's computer and changed the locks on his office door.  (Doc. 29, pp. 8-9, ¶ 18).  Dr. Jones "was advised that Dr. Martin wanted to meet with him and his staff on October 14, 2015."  (Doc. 29, p. 9, ¶ 18).  When Dr. Jones's attorney contacted counsel for the university to request additional information, Dr. Jones's attorney "was advised that the administrative leave was because Dr. Jones 'was a threat to the College of Education's accreditation'."  (Doc. 29, p. 9, ¶ 18).

Several months later, in January 2016, Dr. Wims wrote a second letter to Dr. Jones, notifying him that the Board intended to fire him for "gross professional misconduct. ***You are charged with both using University resources to view obscene***

---

[5] In his third amended complaint, Dr. Jones does not expressly allege that Dr. Martin was his immediate supervisor.  Dr. Martin acknowledged the point in his brief in support of his motion to dismiss.  (Doc. 37, p. 9).

*material and the production and/or creation of obscene materials.*  The behaviors which are the basis of these charges occurred on university property and during duty hours."  (Doc. 29, p. 9, ¶ 19) (emphasis in complaint).  Dr. Jones asserts that he "did not produce, view or download obscene materials onto or with University-owned computers and/or equipment," and no one investigated the initial charge that his immediate supervisor had identified administrative compliance issues.  (Doc. 29, pp. 9-10, ¶¶ 19, 20).

On March 10, 2016, the Board fired Dr. Jones.  (Doc. 29, p. 10, ¶ 21).  Dr. Wims issued Dr. Jones a "notice of termination" that states:

> The Office of provost hereby recommends that the University immediately terminate the employment of Dr. Edward Jones, a tenured faculty in the Department of Educational Leadership and Secondary Education".

(Doc. 29, p. 11, ¶ 25).  In a letter that accompanied the termination notice, Dr. Wims explained that Dr. Hugine had "reviewed such recommendation and supporting documentation and approved your termination."  (Doc. 29, p. 11, ¶ 25).  In a March 10, 2016 email, Dr. Hugine wrote to Dr. Wims:  "I have reviewed your recommendation and approve the proposed action to terminate Dr. Edward Jones employment from Alabama A&M University effective immediately."  (Doc. 29, p. 11, ¶ 25).

Dr. Jones alleges that the defendants fired him for "sexual misconduct" which, according to him, "is synonymous or code language for the plaintiff's sexual orientation." (Doc. 29, p. 10, ¶ 22). Dr. Jones asserts that other employees of the university who have been charged with sexual misconduct have been reprimanded, not fired. (Doc. 29, p. 12, ¶ 27). He asserts: "Never before in the history of Alabama A&M University had any termination of faculty or staff had such wide-ranging broadcast by the University, and it is commonly known that several documented sexual scandals have occurred on the University campus, including scandals involving the highest level of leadership. But none were involving homosexual activity, and none were publicized." (Doc. 29, pp. 5–6, ¶ 10). According to Dr. Jones, since the University fired him, "at least two such sexual scandals have arisen, but both were heterosexual in nature and neither reached the public domain." (Doc. 29, p. 6, ¶ 10).

# IV.

Turning to Dr. Jones's claims, for the reasons discussed below, the Court finds that only his Title VII discrimination claim against the Board may proceed.  The doctrine of qualified immunity bars Dr. Jones's § 1983 claims against Drs. Hugine, Wims, and Martin.

### Section 1983 Qualified Immunity

Drs. Hugine, Wims, and Martin argue that they are entitled to qualified immunity from Dr. Jones's § 1983 claim against them.  (Doc. 37, p. 7).  Qualified immunity is an affirmative defense that protects "government officials performing discretionary functions" from suit "unless the conduct which is the basis for the suit violates 'clearly established federal statutory or constitutional rights of which a reasonable person would know.'"  *GJR Invs. v. Cty. of Escambia*, 132 F.3d 1359, 1366 (11th Cir. 1998) (alteration omitted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity 'does not offer protection if an official knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].'"  *Carter v. Butts Cty.*, 821 F.3d 1310, 1319 (11th Cir.  2016) (quoting *Holmes v. Kucynda*, 321 F.3d 1069, 1077 (11th Cir. 2003), in turn quoting *Harlow*, 457 U.S. at 815) (alteration in *Holmes*).

An official asserting the defense of qualified immunity "must first prove that he was acting within the scope of his discretionary authority." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Courson v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991)) (internal quotation marks omitted). If the official establishes that his actions were within the scope of his discretionary authority, then the burden shifts to the plaintiff to establish that the official violated a constitutional right and that the right was clearly established at the time of the alleged violation. *Carter*, 821 F.3d at 1319; *Lee*, 284 F.3d at 1194. A constitutional right is clearly established if its contours are so clear that a reasonable official would know that what he was doing violated that right. *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). Qualified immunity is not available for discretionary conduct that violates a plaintiff's constitutional rights if the right at issue was not clearly established when the constitutional violation occurred. *Harlow*, 457 U.S. at 818; *Loftus v. Clark-Moore*, 790 F.3d 1200, 1204 (11th Cir. 2012).

To determine whether an official acted within his discretionary authority, a district court must consider "whether the actions are of a type that fell within the employee's job responsibilities." *Carruth v. Bentley*, 942 F.3d 1047, 1054 (11th Cir. 2019) (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)). "The inquiry is two-fold: 'We ask whether the government employee

was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize.'" *Carruth*, 942 F.3d at 1054 (quoting *Harland*, 370 F.3d at 1265).

Drs. Hugine, Wims, and Martin argue that termination of tenured university employees falls within their discretionary authority. The defendants contend that as the president of A&M, Dr. Hugine had the authority to fire Dr. Jones; as provost, Dr. Wims had the authority to recommend that Dr. Hugine fire Dr. Jones; and as the dean of the Department of Education, Dr. Martin was Dr. Jones's immediate supervisor. (Doc. 37, p. 9). Alabama law supports their argument.

Alabama Code § 16-49-23 outlines the responsibilities of Alabama public university presidents, including a president's authority to remove an instructor. ALA. CODE § 16-49-23. In *Ex parte Hugine*, the Alabama Supreme Court concluded that "[e]mployment decisions are clearly within the job description of the president of the University, and the provost is specifically designated to help the president in making such decisions. Likewise, dismissal is among the tools available to the president in making employment decisions." *Ex parte Hugine*, 256 So. 3d 30, 47 (Ala. 2017). Consequently, "when they terminated [Dr. Jones's] employment, [Dr.] Hugine and [Dr.] Wims were engaged in a 'discretionary function' as that concept is understood for purposes of the doctrine of qualified immunity." *Ex parte Hugine*,

256 So. 3d at 47 (internal citations omitted).  Dr. Martin also was exercising a discretionary function when he recommended Dr. Jones's termination to Dr. Wims.

Dr. Jones argues that Drs. Hugine, Wims, and Martin are not entitled to qualified immunity because "[t]he question at issue in this case . . . is not merely related to whether President (Dr. Hugine) and those who he appoints (Drs. Wims and Martin) with certain circumscribed authority, could terminate Dr. Jones; but whether Drs. Hugine, Wims, and Martin could do so based upon his sexual orientation; and moreover, whether the defendant Drs. could engage in other discriminatory actions in contravention of the University's policies and procedures and Alabama law."  (Doc. 41, p. 7).  Because employment discrimination based on sexual orientation violates university policy, Dr. Jones argues, the officials' conduct "could not possibly fall within the scope of [their] discretionary authority . . . ." (Doc. 41, p. 8).

Dr. Jones likely is drawing on the language in *Carruth* that requires a government employee, seeking to prove that he acted within his discretionary authority, to demonstrate that he used "means that were within his power to utilize." *Carruth*, 942 F.3d at 1054.  It is logical to suggest that an official's discretionary authority is defined not only by the statutory authority given to the official by a state legislature but also by the policies that a state entity has set for itself, pursuant to its

14

statutory powers.[6]  But Dr. Jones has not cited, and this Court has not found, authority that allows this Court to look beyond the statutory powers conferred on Drs. Hugine, Wims, and Martin in examining the means component of the discretionary authority test.  In *Ex parte Hugine*, the Alabama Supreme Court equated "means" with "tools" and held that "dismissal is among the tools available" to a university president under Alabama law.  *Ex parte Hugine*, 256 So. 3d at 47. Likewise, in *Carruth*, to examine the means component of the discretionary function test, the Eleventh Circuit Court of Appeals looked to Alabama law to determine the powers and duties of the Governor of Alabama.  *Carruth*, 942 F.3d at 1054.  Under *Carruth* and *Hugine*, Drs. Hugine, Wims, and Martin have established that under Alabama law, they exercised their discretionary authority when they fired Dr. Jones.

Because Drs. Hugine, Wims, and Martin have established that they were acting within their discretionary authority when they terminated Dr. Jones, to overcome the defendants' immunity defense, Dr. Jones must demonstrate that these defendants violated his constitutional rights and that "decisions of the Supreme Court or [the Eleventh Circuit Court of Appeals] in existence at the time clearly established that it was a violation."  *Cantu v. City of Dothan, Ala.*, 974 F.3d 1217, 1228 (11th Cir. 2020).  Dr. Jones asserts that Drs. Hugine, Wims, and Martin

---

[6] "The primary responsibility" of A&M's Board of Trustees "is to set policy and prescribe rates of tuition and fees."  ALA. CODE § 16-49-23.

15

violated his constitutional rights by firing him because of his sexual orientation. (Doc. 29, p. 15, ¶ 31).  If they did fire Dr. Jones because of his sexual orientation, Drs. Hugine, Wims, and Martin violated Dr. Jones's right to be free from discrimination based on sexual orientation.  Nevertheless, Drs. Hugine, Wims, and Martin are entitled to qualified immunity because when they decided to fire Dr. Jones in March 2016, existing United States Supreme Court and Eleventh Circuit Court of Appeals precedent did not establish that discrimination based on sexual orientation violated an employee's rights.  To the contrary, as late as 2018, in *Bostock v. Clayton Cty. Bd. of Comm'rs*, 723 Fed. Appx. 964 (11th Cir. 2018), *rev'd and remanded sub nom*, *Bostock v. Clayton Cty. Ga.*, 140 S.Ct. 1731 (2020), the Eleventh Circuit stated:  "[t]his circuit had previously held that discharge for homosexuality is *not* prohibited by Title VII."  *Bostock*, 723 Fed. Appx. at 964 (citing *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 937 (5th Cir. 1979) (emphasis in *Bostock*)).[7]

Eleventh Circuit precedent as of 2016 undermines Dr. Jones's ability to demonstrate that case law in existence at the time of his termination notified Drs. Hugine, Wims, and Martin that they would violate his constitutional rights if they fired him based on his sexual orientation.  *Cantu*, 974 F.3d at 1232 ("The decision

---

[7] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (holding that decisions that the Fifth Circuit Court of Appeals issued before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit).

in a pre-existing case like that will 'make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates federal law.'") (quoting *Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000)). Because Eleventh Circuit precedent in 2016 indicated that discharge for homosexuality was not constitutionally prohibited, Dr. Jones cannot rely on the "obvious clarity" exception to the "clearly established law standard."  As a matter of law, the constitutional right to be free from employment discrimination based on sexual orientation became clear in the Eleventh Circuit in 2020 following the Supreme Court's decision in *Bostock*.  *See Bostock*, 140 S.Ct. at 1737 ("Today, we must decide whether an employer can fire someone simply for being homosexual or transgender.  The answer is clear.  An employer who fires an individual for being homosexual or transgender fires that person for traits or actions it would not have questioned in members of a different sex.  Sex plays a necessary and undisguisable role in the decision, exactly what Title VII forbids.").[8]

---

[8] Dr. Jones accurately points out that A&M's "Non-Discrimination and Anti-Harassment Policy," which became effective in June of 2012, notified Drs. Hugine, Wims, and Martin in 2016 that the university did not tolerate discrimination based on sexual orientation.  (Doc. 41, p. 8) (citing Alabama   A&M   University   Procedure   6.10   (https://www.aamu.edu/about/policies-procedures/_documents/6.10-non-discrimination-and-anti-harassment-policy.pdf).   The test for qualified immunity in this circuit requires more than proof of a policy violation; a plaintiff must demonstrate a clearly established constitutional violation.  *See, e.g.*, *Dolihite v. Maughon ex rel. Videon*, 74 F.3d 1027, 1044 (11th Cir. 1996) ("[N]o cases hold that a government official's violation of facility or department policy, without more, constitutes a constitutional violation."); *see generally Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (violation of a jail policy does not violate clearly established constitutional law).

To avoid the defense of qualified immunity based on *Bostock*, Dr. Jones argues that "the Complaint clearly alleges Drs. Hugine, Wims, and Martin engaged in discriminatory conduct that violated Dr. Jones' constitutional right to intimate association, which falls under the protections guaranteed by the Due Process Clause of the United States Constitution."  (Doc. 41, p. 14).  The Court has not located in Dr. Jones's third amended complaint allegations concerning the Due Process Clause or the right to intimate association.[9]  Dr. Jones expressly states only two claims:  a Title VII disparate treatment claim against the Board and an "*Employment Discrimination*" claim against Drs. Hugine, Wims, and Martin under § 1983 based on Dr. Jones's contention that those defendants "subjected him to discharge of his employment because of his sexual orientation."  (Doc. 39, pp. 13-16) (emphasis in third amended complaint).

Based on the allegations in Dr. Jones's third amended complaint and based on the law of the Eleventh Circuit in 2016, Drs. Hugine, Wims, and Martin are entitled

--------

[9] In his initial complaint against Alabama A&M University, Dr. Jones alleged that the conduct of university officials "deprived him of his right to due process and, has made it impossible for [him] to seek redress under the Faculty Grievance Hearing Process as is guaranteed by the Faculty Handbook."  (Doc. 1, p. 6, ¶ 14).  The reference to "due process" does not appear in Dr. Jones's third amended complaint.

The right of intimate association under the First Amendment "is the freedom to choose to enter into and maintain certain intimate human relationships, and is protected from undue government intrusion as a fundamental aspect of personal liberty."  *Gaines v. Wardynski*, 871 F.3d 1203, 1212 (11th Cir. 2017) (internal quotations and citations omitted).  There is no reference to the First Amendment in Dr. Jones's third amended complaint.

18

to qualified immunity on Dr. Jones's § 1983 sexual orientation employment discrimination claim.  Accordingly, the Court dismisses Dr. Jones's § 1983 claim against Drs. Hugine, Wims, and Martin.

### *Title VII Sexual Orientation Discrimination*

Title VII "prohibits employers from discriminating 'against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1152 (11th Cir. 2020) (quoting 42 U.S.C. § 2000e-2(a)(1)).  "A claim under this statutory section is referred to as a 'disparate treatment claim.'"  *Ortiz v. Sch. Bd. of Broward Cty., Fla.*, 780 Fed. Appx. 780, 783 (11th Cir. 2019).

Based on the Board's motion to dismiss and its initial brief in support of the motion, the Court does not understand the Board's motion to reach Dr. Jones's Title VII discrimination claim based on his termination on March 10, 2016.  Although the defendants broadly ask the Court to dismiss Dr. Jones's third amended complaint with prejudice, they make no specific challenge to Dr. Jones's Title VII discrimination claim in their motion to dismiss or in their opening brief in support

19

of the motion.  (*Compare*, *e.g.*, Doc. 37, p. 5 and Doc. 37, p. 27).[10]  In their reply brief, in the context of their claim-splitting/*res judicata* argument, the defendants urge the Court to dismiss all of Dr. Jones's Title VII claims on the basis of claim or issue preclusion, (Doc. 42, pp. 13-15), but the defendants limited their claim-splitting/*res judicata* argument in their initial brief to Dr. Jones's Title VII retaliation claim.  (Doc. 37, pp. 5, 22-27; *see also* Doc. 36, p. 3).  Therefore, Dr. Jones has not had an opportunity to respond to the defendants' claim splitting or *res judicata* argument as it pertains to his Title VII disparate treatment claim.  Moreover, Dr. Jones could not have asserted a colorable Title VII discrimination claim in his initial lawsuit against the Board for the reasons discussed with respect to Drs. Hugine, Wims, and Martin's affirmative defense of qualified immunity – under binding authority in this circuit, a Title VII claim for discrimination based on sexual orientation was not available to Dr. Jones until the Supreme Court issued its decision in *Bostock*.

Though the Board has not challenged the substance of Dr. Jones's factual allegations concerning his disparate treatment claim, the Court recognizes that "[a] Title VII complaint need not allege facts sufficient to make out a classic prima facie

---

[10] In its motion to dismiss, the Board requested an award of fees if Dr. Jones did not voluntarily dismiss his claims against the Board, (Doc. 36, p. 4, n.2), but the Board did not challenge Dr. Jones's Title VII discrimination claim in its motion to dismiss; it challenged only his Title VII retaliation claim, (Doc. 36, p. 3).

case, but must simply provide enough factual matter to plausibly suggest intentional discrimination." *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir. 2017). In his third amended complaint, to establish that the Board treated him differently from others because of his sexual orientation, Dr. Jones points to "several documented sexual scandals [that] have occurred on the University campus, including scandals involving the highest level of leadership.   But none were involving homosexual activity, and none were publicized." (Doc. 29, pp. 5–6, ¶ 10). He asserts that based on his time serving on A&M's Grievance Committee, he has "first-hand knowledge of the manner in which prior matters involving inappropriate heterosexual activities on campus were handled." (Doc. 29, pp. 5–6, ¶ 10). Dr. Jones alleges that Dr. Wims "has had several sexual misconduct charges filed against him, but he has been protected by the University's administration, including, but not limited to [Dr.] Hugine." (Doc. 29, p. 12, ¶ 27). But Dr. Jones does not allege what these charges were and whether Dr. Wims, as Provost, is similarly situated to him.[11]

These vague examples of the Board's alleged handling of sexual misconduct involving heterosexual employees fall short of the comparator standard in this circuit. *Lewis v. City of Union City, Ga.*, 918 F.3d 1213, 1222–23, 1226 (11th Cir. 2019) (holding that a plaintiff proceeding under the *McDonnell Douglas* framework

---

[11] The Court infers from Dr. Jones's attempt to use Dr. Wims as a comparator that Dr. Jones alleges that Dr. Wims is heterosexual.

must show that she and her comparators are "similarly situated in all material respects" and stating that "[t]reating *different* cases differently is not discriminatory, let alone intentionally so.") (citations omitted; emphasis in *Lewis*).

Dr. Jones alleges other conduct that potentially could qualify as circumstantial evidence of discriminatory intent under the mosaic standard. *See Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011). For example, Dr. Jones asserts that Kevin Rolle, A&M's COO, was "indicted by a grand jury for theft of property" but "[d]uring the entire pendency of the State's case against Kevin Rolle, the University did not terminate [him]; rather the University supported him by attending status calls with him," and the Board did not fire Mr. Rolle. (Doc. 29, pp. 1–13, ¶ 27). In comparison, he contends that when A&M decided to investigate his alleged criminal conduct, the Board placed him on administrative leave and locked him out of his office "with no discussion or warning." (Doc. 29, p. 6, ¶ 11; Doc. 29, p. 9, ¶ 18).[12] Dr. Jones alleges that the reason that Dr. Wims gave for placing him on administrative leave on October 13, 2015, was vague and inconsistent with the rationale for termination provided in his January 14, 2016 notice of intent to

---

[12] A&M began its investigation of Dr. Jones in October of 2015. (Doc. 29, p. 9, ¶ 18). On July 27, 2017, a Madison County grand jury indicted Dr. Jones on charges of theft in the first degree and use of an official position or office for personal gain. (Doc. 37-2, p. 2). The grand jury charged that Dr. Jones collected funds in student fees from A&M students and converted those funds for personal use. (Doc. 37-2, p. 3). On September 24, 2018, Dr. Jones pleaded guilty to an amended misdemeanor count of using his official position for personal gain. (Doc. 37-2, pp. 5–6).

terminate.  (Doc. 29, pp. 7-9).  *See, e.g.*, *Rodriguez v. Cargo Airport Services USA, LLC*, 648 Fed. Appx. 986, 991 (11th Cir. 2016) ("An employer's inconsistent or 'shifting' reasons for an employment action may constitute evidence that the employer's proffered reason for the challenged employment action is not credible."); *Landolfi v. City of Melbourne, Fla.*, 515 Fed. Appx. 832, 835 (11th Cir. 2013) ("We have held that an employer's 'shifting reasons' permitted the jury to conclude that its justifications for its decisions were unworthy of credence, thereby allowing it to infer discrimination.").  Dr. Jones also asserts that the Board violated the procedures in A&M's Faculty Handbook when the Board terminated him.  (Doc. 29, pp. 11-12).  *See, e.g.*, *Chavez v. Credit Nation Auto Sales, LLC*, 641 Fed. Appx. 883, 891–92 (11th Cir. 2016) (employer bypassing discipline policy in employee handbook could be evidence of discriminatory intent); *Rodriguez*, 648 Fed. Appx. at 991 ("[A]n employer's failure to follow its own policies can be evidence of pretext.") (citing *Morrison v. Booth*, 763 F.2d 1366, 1374 (11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination.")); *Hinson v. Clinch Cty., Ga. Bd. of Educ.*, 231 F.3d 821, 831 (11th Cir. 2000) (employer's deviation from established policies may evidence discriminatory intent).

On the record before the Court, because the Board did not squarely address Dr. Jones's Title VII disparate treatment claim in its motion to dismiss and because there are some allegations in the third amended complaint which, if proven, could

serve as circumstantial evidence of discriminatory intent, the Court will not dismiss Dr. Jones's disparate treatment claim against the Board.

## V.

For the reasons above, the Court grants the individual defendants' motion to dismiss, and the Court confirms the dismissal of Dr. Jones's Title VII retaliation claim against the Board.  Dr. Jones's Title VII disparate treatment claim against the Board may proceed.

**DONE** and **ORDERED** this March 9, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

24